**HELLENIC LINES, LTD., Plaintiff,**

v.

**Walter O'HEARN, William Montella, Nicholas Seregos, John W. McGrath, Inc., McGrath Services Corp., Export Carpenters, Inc. (Formerly: Quin Marine Service Inc.) and Jackson Engineering Co., Inc., Defendants.**

**No. 80 Civ. 7197 (KTD).**

United States District Court,
S. D. New York.

March 2, 1982.

See also, D.C., 523 F.Supp. 244.

Zock, Petrie, Reid & Curtin, New York City, for plaintiff; Philip J. Curtin, Nicholas P. Giuliano, New York City, of counsel.

Stillman, Freidman & Shaw, P. C., New York City, for defendant Walter O'Hearn; Edward M. Shaw, New York City, of counsel.

McHugh, Leonard & O'Conor, New York City, for defendants John W. McGrath Corp., McGrath Services Corp. and Export Carpenters, Inc.; James M. Kenny, New York City, of counsel.

Obermaier, Morvillo & Abramowitz, P. C., New York City, for defendants Nicholas Seregos and Jackson Engineering Co., Inc.; Elkan Abramowitz, New York City, Barry A. Bohrer, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

The defendants in this civil action for damages under the Racketeer Influenced and Corrupt Organization Act ["RICO"], 18 U.S.C. §§ 1961–1968, have moved once again to dismiss the complaint. I previously dismissed the complaint under Fed.R. Civ.P. 9(b) for failure to plead fraud with particularity, *Hellenic Lines, Ltd. v. O'Hearn*, 523 F.Supp. 244 (S.D.N.Y.1981), but permitted the plaintiff to replead. Defendants Walter O'Hearn, William Montella, John S. McGrath, Inc., McGrath Services Corp. and Export Carpenters, Inc. [the "McGrath defendants"] now seek to have the amended complaint dismissed under

Rule 9(b) for failure to plead fraud with particularity and alternatively under Rule 11 as a sham. Defendants Nicholas Seregos and Jackson Engineering Co. [the "Jackson defendants"] join the Rule 9(b) motion and alternatively seek to have certain matter struck from the complaint under Rule 12(f) as immaterial. It appears that the amended complaint pleads the alleged fraud as specifically as possible at the present time without discovery of facts in defendants' hands. Accordingly, the motion to dismiss is denied.

## I. THE AMENDED COMPLAINT

The fraudulent scheme alleged in the amended complaint is essentially the same as that alleged in the original complaint and the reader is assumed to have familiarity with the prior discussion of that scheme and the parties. *See Hellenic Lines, Ltd. v. O'Hearn, supra,* 523 F.Supp. at 245–46.

The amended complaint adds several paragraphs specifying in somewhat greater detail its allegations against the McGrath defendants. These were as follows:

Par. 4.3 During the period from 1975 to 1979, Quin presented to Hellenic 1436 invoices for service and materials ordered by Hellenic for its liner operations.

Par. 4.4 That the total amount of these invoices was $755,290.06 and that Hellenic believing such invoices to be true and correct paid to Quin the total sum of $738,751.83 on account of these invoices and received credits from Quin with respect to the balance. A listing of such invoices is attached hereto, made a part hereof and marked Exhibit "A".

Par. 4.5 Each and every such invoice submitted by Quin to Hellenic during the period from 1975 to 1979 was inflated by 50%.

In addition, the allegation of paragraph 5.2 that the McGrath defendants "defrauded Hellenic in the sum of $100,000," has been changed in the amended complaint paragraph 6.2 to include Montella and O'Hearn and to increase the dollar figure to $369,375.92, which is exactly 50% of the total amount of the 1,436 invoices. Finally, the amended complaint is based on personal knowledge, whereas the original complaint was alleged entirely on information and belief.

Against the Jackson defendants, the amended complaint added several new paragraphs and changed some dates and the amount of alleged damages. The additional paragraphs were:

Par. 4.16 During the period from 1977 through May, 1979, Defendant, Jackson Engineering, presented to Hellenic invoices on a regular and systematic basis.

Par. 4.17 That the total amount of these invoices was $1,054,704.61 and that Hellenic paid to Jackson Engineering the total of $1,054,704.61 on account of these invoices, believing such invoices to be true and correct.

Par. 4.18 That at the Scotto trial, Seregos testified under oath that:

(a) "The invoices [submitted to Hellenic], I would add usually $6,000 of fabrication on top, he [Krikos, a former employee of Hellenic] would get half plus a percentage of the original work done. That is why no records were necessary."

(b) "In 1978 it became almost standard procedure to add $6,000 every week."

Par. 4.19 That during the period from January, 1977 through May 25, 1979, Jackson Engineering fraudulently overbilled Hellenic in the amount of $750,000.00.

Par. 4.20 That Seregos caused Jackson Engineering to embark on the aforesaid false billing scheme and condoned and abetted the fraudulent scheme throughout.

Par. 4.22 Through a pattern of racketeering, the defendants, Jackson Engineering and Seregos, maintained, directly and indirectly, an interest in and control of an enterprise which was engaged in, and the activities of which affected, foreign commerce in violation of 18 U.S.C. § 1962(b).

Furthermore, the amended complaint expanded the time period in which it alleged

that Seregos conspired with labor officials to run through May, 1979 rather than the year 1978, and it decreased the alleged damages from $800,000 to $750,000.

## II. DISCUSSION

The McGrath defendants raise two objections to the sufficiency of the amended complaint. First, they claim that it does not appraise them "of how the alleged fraud was perpetrated by Montella on their behalf." For example, they assert that the complaint is defective because it does not set forth which elements of the invoices for carpentry and lashing work were inflated: the category of workers, the number of workers employed, the days worked, the hours worked per day, or the rates per hour.

Second, the McGrath defendants claim that Montella left the employ of Quin Marine Services, Inc. (the predecessor of defendant Export Carpenters, Inc.) on December 27, 1978, when he entered the Federal Witness Protection Program. Therefore, the 151 invoices rendered by Quin after Montella left could not have been fraudulent. They also claim that the 552 invoices rendered subsequent to June 9, 1978, when Montella agreed to cooperate with the United States Attorney's Office in its investigation of corruption in the waterfront, likewise could not have been fraudulent. Apparently, the defendants would have this court find it incredible that Montella would continue to operate his scheme to submit false invoices after he had agreed to cooperate with the government. The inclusion in the complaint of allegations that the 703 invoices (151 and 552) were fraudulent renders the complaint a "sham and false" and subject to dismissal under Rule 11, argues the McGrath defendants.

■ It must first be noted that plaintiff has not had discovery yet and so could not have been expected to know with absolute certainty the date on which Montella left Quin's employ. Plaintiff has agreed, however, to withdraw the complaint as to the invoices rendered after that date if Montella did in fact leave on that day. Therefore, the motion to dismiss the complaint as to those invoices is denied without prejudice to renewal upon the conclusion of discovery.

As to the 552 invoices rendered before Montella supposedly left Quin and after he started cooperating with the government, it is entirely possible on the record before me that Montella continued his past practices while gathering evidence against the big fish in the International Longshoremen's Association. Again, the defendants may test the sufficiency of plaintiff's evidence by renewed motion following the conclusion of discovery.

■ Because the allegation that these 703 invoices were fraudulent was not made in bad faith, the motion to dismiss under Rule 11 is denied.

■ The critical remaining question is the sufficiency of the complaint against the McGrath defendants in light of Rule 9(b)'s requirement that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A leading treatise notes that the "reference to 'circumstances' is to matters such as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1297, at 403 (1969). Here, the amended complaint alleged that Montella paid bribes to unnamed employees of Hellenic who in turn approved payment to Quin of fraudulent bills; that between 1975 and 1979 Quin submitted to Hellenic 1,436 invoices each of which had been inflated by 50 percent over the actual value of the materials and services supplied; and that Hellenic thereby suffered damages of $369,375.92. These allegations are sufficient to give notice to the defendants of the time, place, and contents of the misrepresentations.

The McGrath defendants argue that they cannot tell from the complaint whether the hours, type of labor, number of laborers, or quantity of materials were the fraudulently inflated part of the invoices. However, Hellenic cannot possibly describe the fraud

in this detail without discovery of the Quin employees involved, particularly Montella. Without this information, Hellenic also cannot find out which of its employees may have participated in the fraud. Hellenic learned that it had been defrauded after Montella testified in a criminal proceeding that he bribed the employees of the fifty odd steamship companies that Quin serviced and that he submitted invoices inflated by 50 percent to those steamship companies. Although he did not identify Hellenic specifically as one of those companies, that is a reasonable inference from his testimony. From his testimony and from documents supplied by McGrath, Hellenic has identified when it was defrauded (1975–79); how it was defrauded (by the submission of 1,436 invoices each of which was inflated by 50 percent); and who defrauded it (Montella acting for Quin in cooperation with employees of Hellenic). It would be unreasonable to expect Hellenic to detail the items on each invoice that were fraudulently inflated until it has had the opportunity to engage in discovery. After that is done, the McGrath defendants may test the sufficiency of Hellenic's evidence by a motion for summary judgment. In the meantime, the McGrath defendants' motion to dismiss the amended complaint for failure to plead fraud with particularity is denied.

The critical question with respect to the Jackson defendants is likewise whether the complaint is pleaded with sufficient particularity. The amended complaint alleges that Seregos made cash payments to two employees of Hellenic, Panitos Krikos and Gerassimos Macris, who approved invoices submitted to Hellenic by Jackson Engineering for services and materials that were in fact never rendered. These invoices were submitted from 1977 through May, 1979, and were allegedly inflated by $6,000 every week during that period, for a total of $750,000. Unlike the complaint against the McGrath defendants, the complaint does not identify the specific invoices alleged to be fraudulently overstated. Rather, plaintiff relies on Seregos's testimony at the Scotto trial admitting that he bilked Hellenic by adding $6,000 in phony material

charges to Jackson's invoices to Hellenic almost every week in 1978. Although plaintiff presumably has in its own files copies of these invoices, it is not necessary that plaintiff list them all in the complaint in order to give the Jackson defendants notice of the circumstances of the alleged fraud. Seregos's testimony that a fraud was perpetrated on Hellenic and the general outlines of how that fraud was worked is sufficient for pleading purposes. The precise details of that fraud—which invoices were inflated and by how much—lie in the hands of Seregos, the President of Jackson Engineering. Therefore, "substantial justice" requires that the motion to dismiss be denied. *See Clairdale Enterprises, Inc. v. C. I. Realty Investors*, 423 F.Supp. 257, 259 (S.D.N.Y.1976). Of course, the Jackson defendants are free to force Hellenic to narrow and substantiate its claims prior to trial through discovery and a motion for summary judgment.

■ Finally, the Jackson defendants move under Rule 12(f) to strike paragraphs 4.15 and 4.21(b) & (c) as containing immaterial matter. These paragraphs refer to payments made by the Jackson defendants to officials of the International Longshoremen's Association. Hellenic's theory is apparently that Jackson used the funds generated by the fraudulent billing of Hellenic to make illegal payments to labor officials. Put another way, the Jackson/Seregos enterprise operated through a pattern of racketeering activity (bribery of labor officials), the funding of which required Jackson to defraud Hellenic through the inflated invoices. On merely these pleadings, I cannot say that there is no logical causal connection between the bribery of the union officers and the fraudulent billing of Hellenic. Therefore the motion to strike is denied.

In sum, defendants' motions are denied in their entirety.

SO ORDERED.